Rapaport Law Firm, PLLC | Attorneys at Law | One Penn Plaza | Suite 2430 | New York, NY 10119 | Tel 212.382.1600 | Fax 212.382.0920 | www.rapaportlaw.com

# Rapaport Law Firm

Marc A. Rapaport*
Tel (212) 382-1600
Fax (212) 382-0920
mrapaport@rapaportlaw.com

*Member NY & NJ Bars

May 29, 2020

**Via ECF**

Honorable Mary Kay Vyskocil
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    Manuel Pimentel v. 615 W. 176th St. LLC and Chong S. Piper
             Case No. 19-cv-01374 (MKV)

Dear Judge Vyskocil:

      We are counsel to plaintiff Manuel Pimentel ("Plaintiff") in the above-referenced matter. Plaintiff writes jointly with defendants 615 W 176th St. LLC and Chong S. Piper (collectively, "Defendants") to request that the Court approve the Settlement Agreement (the "Agreement"), which is submitted simultaneously with this letter as Exhibit 1. Plaintiff's counsel further requests that the Court approve Plaintiff's attorney fees and costs.

      The parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

      **I.**      **Introduction and Procedural Background.**

      In a Complaint filed on February 15, 2019, Plaintiff asserts wage and other related claims arising from maintenance work he performed from December 2015 through November 2018 at Defendants' apartment building located at 615 West 176th Street, New York, NY (the "Building"). Plaintiff alleges Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") violations and asserts claims for (i) unpaid minimum wages under the FLSA; (ii) unpaid minimum wages under NYLL; (iii) wage statement violations pursuant to NYLL; (iv) wage notice violations pursuant to NYLL; and (v) illegal deductions pursuant to the NYLL.

      The Court referred the parties to mediation, which was held on September 5, 2019. Although the mediation did not result in settlement, discussions continued between the parties. Plaintiff and Defendants have since exchanged discovery requests, and the parties believe that they have exchanged sufficient information and documents to reach an informed and fair resolution of this litigation. Depositions have been noticed but have not yet been conducted.

Given that Plaintiff's claims arise, in part, under the FLSA, the Agreements must be approved by this Court pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). In evaluating whether a proposed settlement is fair and reasonable, "a court should consider the totality of circumstances including, but not limited to, the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the produce of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-336 (S.D.N.Y. 2012) (citations and quotation marks omitted).

## II. Summary of Plaintiff's Claims.

Plaintiff alleges that he was employed by Defendants as a superintendent/maintenance worker from approximately December 2015 through approximately November 2018 at the Building. Plaintiff alleges that he typically worked Monday through Friday, from 7:00 a.m. to 5:00 p.m. each day. Plaintiff also alleges that he was required, as a condition of his employment, to be on call, 24 hours per day, seven days a week to address emergent issues. Plaintiff further alleges that Defendants did not ask him to record the number of hours that he worked each week. Plaintiff alleges that except for sporadic payments that he received for extensive projects, he received no monetary compensation for his work. Although Plaintiff was provided with a free apartment at the Building, Plaintiff alleges that Defendants cannot credit the value of this apartment against wages because the apartment was provided primarily for Defendants' benefit so that Plaintiff could be readily available to address emergent issues at the Building.

## III. Summary of Alleged Damages.

*Unpaid Minimum Wages:*

In a best-case scenario calculation, Plaintiff initially estimated that he is owed $60,264.00 for unpaid overtime, exclusive of liquidated damages and interest. Plaintiff's counsel presented this initial calculation to Defendants in preparation for the mediation. Although the parties were unable to reach a settlement at the mediation, the process fostered the beginning of extensive communications about disputed issues, including the average number of hours that Plaintiff worked per week and whether he was required to be on-call.

Plaintiff's top-line damage calculation (i.e., best case scenario) is summarized as follows:

| Year | Work Weeks | Applicable NY minim. wage | Minim Wages Owed (i.e., first 40 hrs per week) |
|---|---|---|---|
| 2015 | 4 | $8.75 | **$1,400** ($350x4) |
| 2016 | 52 | $9.00 | **$18,720** ($360 x 52) |

2

| 2017 | 52 | $9.70 | **$20,176** ($388 x 52) |
|---|---|---|---|
| 2018 | 48 | $10.40 | **$19,968** ($416 x 48) |
| **Total** | | | **$60,264.00** |

*Unpaid Overtime:*

Plaintiff also alleged that he worked overtime for which he was not compensated. However, due to the lack of records relating to the number of hours that Plaintiff worked during any particular workweek, Plaintiff would face challenges in establishing the amount of overtime hours that he worked. If Plaintiff were to establish that he worked an average of 20 overtime hours per week, he could potentially recover overtime damages of $30,132.00, not including liquidated damages. Plaintiff acknowledges that proving the extent to which he is entitled to compensation for on-call time would be difficult.

*Wage Notice/Wage Statement Claims:*

Plaintiff also asserts that he is entitled to statutory damage for wage notice violations (NYLL § 195(1)(a)) in the amount of $5,000.00 and wage statement violations (NYLL §§ 195(3)) and 198(1-d), also in the amount of $5,000.00.

## IV. Defendants Assert that Plaintiff's NYLL Claims are Precluded by the "Janitor Exemption."

Defendants have argued that Plaintiff's NYLL claims are precluded by the NYLL exemption pursuant to 12 NYCRR Part 141-3.4 (commonly known as the "janitor exemption"). The janitor exemption allows employers to designate one person as a residential building's "janitor," whose rate of pay is based on the number of units. If the employer does so, the designated janitor is exempt from overtime requirements under the NYLL.

While Plaintiff argues that the NYLL janitor exemption does not diminish Plaintiff's entitlement to hourly minimum wages and premium overtime compensation under the FLSA, and that Defendants failed to designate Plaintiff as the "janitor," there is a risk that the janitor exemption would be applied. In that case, damages would be reduced because the federal minimum wage is lower than the applicable minimum wage rates under New York's Minimum Wage Act.

Defendants also assert that Plaintiff worked far fewer hours than Plaintiff alleges and that, in any event, Defendants are entitled to a credit against wages for the value of the apartment that Defendants provided to Plaintiff.

## V. The Agreement is Fair and Reasonable.

The parties represent to the Court that the settlement between the parties is a fair and reasonable resolution of a *bona fide* dispute, and the Agreement is the product of extensive and challenging negotiations.

3

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $30,000.00, to be paid in full within 20 days of Court approval.

We believe that the settlement amount is fair and reasonable in light of the uncertainties associated with establishing Plaintiff's precise amount of overtime hours. *See Beckert v. Rubinov*, 15 Civ. 1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(finding that the "amount [plaintiff] would receive under the Agreement ($29,557.97) is a substantial proportion of the maximum possible recovery he identifies ($114,700)").

Here, the parties were able to reach an agreement before incurring the costs of depositions and trial. *See Burgos v. San Miguel Transp., Inc.*, 2016 U.S. Dist. LEXIS 166248, *6, 2016 WL 7015760 (S.D.N.Y. Dec. 1, 2016)(citing the relatively early stage of the case as one of the factors supporting the fairness of a settlement that was substantially below the amount that plaintiff initially contemplated). Furthermore, here, as in *Burgos*, there is no assurance that Plaintiff could be awarded liquidated damages under FLSA or NYLL if this matter were to proceed to trial.

Furthermore, if this matter were to proceed to trial, Plaintiff would have to rely solely on his own recollection of the amount of overtime hours that he worked. Plaintiff is cognizant of that challenges that this would entail. Furthermore, because Plaintiff is elderly and suffers from multiple health issues, it is particularly beneficial for him to avoid the potential delays and stress that might be occasioned if this case proceeded to a trial.

**VI. Application for Attorneys' Fees.**

Under both the FLSA and NYLL, Plaintiff is entitled to recover attorneys' fees and costs. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his or her own compensation did not have an adverse impact on the extent of relief counsel obtained for the client. *See Wolinsky*, 900 F. Supp. 2d at 336.

The settlement provides Plaintiff's attorneys with reimbursement of costs totaling $1,010.15 and attorneys' fees in the amount of $9,553.45. Plaintiff's counsel seeks approval of these fees, which represent approximately 33% of the net total settlement amount of $28,989.85, i.e., after reimbursement of $1,010.15 in costs. Plaintiff's counsel represents Plaintiff on a contingent basis, pursuant to a retainer agreement, which provides for attorneys' fees of one-third of the net recovery. A copy of the retainer agreement is attached hereto as Exhibit 2. Contingency fees of one-third are routinely approved in this Circuit. *Sierra v. Mid City Gym and Tanning LLC*, No. 16 Civ. 2892, 2017 WL 4862070 *4 (S.D.N.Y. Oct. 25, 2017); *In Gaspar v. Personal Touch Moving, Inc.,* No. 13 Civ. 8187, 2015 WL 7871036 *2 (S.D.N.Y. Dec. 3, 2015); and *Feliz v. Parkoff Operating Corp.*, 2018 U.S. Dist. LEXIS 51572 at *8, 2018 WL 1581991 (S.D.N.Y. March 27, 2018).

The amount of legal fees that Plaintiff's counsel requests is consistent with the 33% contingency provided for in the retainer agreement, and is substantially less than the amount indicated by the lodestar calculations. Rapaport Law Firm's time spent on this matter and the expenses reasonably incurred are set forth in the accurate, detailed and contemporaneous records attached hereto as Exhibit 3. Our lodestar in this case (not including costs and disbursements) is $23,447.81, which is nearly double the amount of the legal fees that we ask the Court to approve.

The lodestar reflects a billing rate of $400/hr for Marc Rapaport, the managing member of Rapaport Law Firm PLLC; $115 p/hr for Marcela Cabezas and $95/hr for Karina Gulfo, paralegals at Rapaport Law Firm, PLLC. These rates have been held to be reasonable in the Southern District of New York. *See Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 514-15 (S.D.N.Y. 2011)(collecting cases on reasonable hourly rates). In addition, in prior Cheeks applications in the Southern and Eastern Districts, judges have approved these precise billing rates for our firm.

The attorneys and staff who were involved in this case, and whose time is reflected in the attached billing records, are:

1. **Marc Rapaport.**

   Marc Rapaport is the managing member of Rapaport Law Firm, where he began his practice in 1995. He has more than twenty years of experience litigating employment matters on behalf of employees in New York. He received a J.D. from Georgetown University Law Center in 1992. Thereafter, he worked as a Staff Attorney for the United States Department of Justice in Washington, D.C. He represents employees in a broad range of discrimination and wage/hour matters. He is an active member of the National Employment Lawyers Association and the National Employment Lawyers Association New York. He believes that his clients also benefit from his broader experience beyond the field of employment law, including his extensive experience litigating commercial disputes in state and federal courts.

   For more than 25 years, Mr. Rapaport has endeavored to represent immigrant workers who often find it difficult to obtain skilled legal representation. In recent years, he has particularly focused on representing immigrant workers in wage cases, solely by way of example, the following matters: Armas et al. v. SKYC Management LLC et al., 2014 CV 6360 (PGG)(HBP); Castillo et al. v.140 Ash Associates, LLC, et al., 16-cv-5216 (FB)(PK); Salas et al. v. Phoenix ACV Construction Services, LLC et al., 16-cv-08066 (LAP); Flores et al. v. Claremont Properties, 17-cv-001316 (KBF); and Montalvo, et al. v Arkar, et al., 17-cv-06693 (AJN). His requested hourly rate of $400.00 has been approved by multiple judges in the Second Circuit. *See, e.g., Montalvo v. Arkar, Inc.*, No. 17-cv-6693, 2018 U.S. Dist. LEXIS 79667 (S.D.N.Y. May 10, 2018).

2. **Marcela Cabezas.**

   Marcela Cabezas has been a paralegal at Rapaport Law Firm since 1998. Ms. Cabezas graduated from New York Institute of Technology with a B.S., and she also has a certificate from the New York Paralegal School. Ms. Cabezas speaks fluent Spanish. Because of her language skills and extensive experience providing paralegal support in wage and employment cases, Ms. Cabezas plays a crucial and effective role in the firm's representation of immigrant workers. For nearly two decades, she has served as a point of contact for the firm's Spanish-speaking clients. She has devoted decades of her life to helping underprivileged immigrant workers.

3. **Karina Gulfo.**

   Karina Gulfo joined Rapaport Law Firm, PLLC as a paralegal in August 2018. Ms. Gulfo is fluent in Spanish, a skill which is essential to our effective representation of immigrant workers. Previously, Ms. Gulfo was a paralegal for more than three years at a litigation law firm

where she similarly had significant responsibilities involving communications with immigrant clients. Ms. Gulfo is also an undergraduate student at CUNY (John Jay College of Criminal Justice).

      We respectfully request that the Court approve the Agreement, as well as the amount of legal fees requested herein. The parties thank the Court for its attention to this matter.

                            Respectfully yours,

                            /s/

                            Marc A. Rapaport

Encls. (Exhibs 1 – 3)

Via ECF

cc:      All Attorneys of Record